UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 0:21-cv-61756-GOODMAN
[CONSENT]

COLE-PARMER INSTRUMENT
COMPANY, LLC,

    Plaintiff,

v.

PROFESSIONAL LABORATORIES, INC.,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION
TO DISQUALIFY PLAINTIFF'S COUNSEL**

In this trademark infringement case, Defendant Professional Laboratories, Inc. ("Defendant" or "Pro-Lab") filed a Motion to Disqualify Plaintiff's Counsel (and their law firms, ArentFox, LLP and Carlton Fields) and Request for Sanctions in the Form of Attorneys' Fees and Dismissal with Prejudice. [ECF No. 95]. Plaintiff Cole-Parmer Instrument Company, LLC ("Plaintiff" or "Cole-Parmer") filed a response [ECF No. 97] and Defendant filed a reply [ECF No. 98].

For the reasons discussed below, the Undersigned **denies** Defendant's motion.

**I.**    **Background**

James E. McDonnell, IV ("McDonnell") is the owner of Pro-Lab and has worked

with Dr. Daniel Perlman ("Perlman"), owner of Perlman Consulting, for more than twenty years developing multiple products, inventions, and patents. In 2018, Perlman was represented by attorney Lin Hymel ("Hymel"), then a partner at the now-defunct Posternak law firm. On January 1, 2019, Posternak completed its merger with ArentFox, and Hymel became a partner in ArentFox's Boston office.

In April and May of 2019, Perlman sent several emails to McDonnell concerning a "petri dish" product and a "spore trap," the latter of which is the subject of the instant lawsuit. Many of these emails included Hymel as a CC recipient.

Pursuant to an agreement between Perlman and McDonnell, Hymel sent to McDonnell an invoice for work that had been done on the "petri dish" product while he was employed by Posternak. The invoice had an ArentFox letterhead and was addressed to Perlman Consulting.

Hymel left ArentFox on July 12, 2019 to work at a different firm and still represents Perlman. According to McDonnell, Hymel informed him that ArentFox would still have access to the communications exchanged between Hymel, McDonnell, and Perlman. McDonnell alleges that he reasonably believed that Hymel was his attorney when these communications occurred.

Plaintiff is represented by attorneys from ArentFox (admitted pro hac vice) and local counsel from the Carlton Fields firm. Defendant claims that all this information

2

came to light during discovery and revealed a conflict of interest which McDonnell has not waived. Because of this, Defendant asks the Court to disqualify Plaintiff's counsel, award Defendant all costs and expenses, and dismiss the lawsuit with prejudice.

## II. Legal Standard

"[D]isqualification of a party's chosen counsel is a harsh sanction and an extraordinary remedy which should be resorted to sparingly." *City of Apopka v. All Corners, Inc.*, 701 So.2d 641, 644 (Fla. 5th DCA 1997) (internal quotations omitted); *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 754 (11th Cir. 2006) ("[A] court should recognize that a motion to disqualify is a drastic measure."); *see also Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992) ("The drastic nature of disqualification requires that courts avoid overly-mechanical adherence to disciplinary canons at the expense of litigants' rights freely to choose their counsel.").

Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if "compelling reasons" exist. *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003) (quoting *Texas Catastrophe Property Ins. Ass'n v. Morales*, 975 F.2d 1178, 1181 (5th Cir. 1992)). The party seeking to disqualify opposing counsel shoulders the burden of establishing the compelling reasons supporting disqualification. *Id.*

The court's authority to disqualify a party's chosen counsel arises from two sources. "First, attorneys are bound by the local rules of the court in which they appear .

3

. . . Second, federal common law also governs attorneys' professional conduct because motions to disqualify are substantive motions affecting the rights of the parties." *Herrmann*, 199 F. App'x at 752. "If a district court bases its disqualification order on an allegation of an ethical violation, 'the court may not simply rely on a general inherent power to admit and suspend attorneys, without any limit on such power.'" *Id.* (quoting *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997)). "Instead, '[t]he court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule.'" *Id.* (quoting *Schlumberger Techs., Inc.*, 113 F.3d at 1561)

### III. Analysis

Defendant's motion concerns Hymel's representation of Perlman and purported representation of McDonnell. As noted, Hymel was, for a brief time, a partner at ArentFox. In its initial motion, Defendant cites to Rule 4-1.7 of the Florida Rules of Professional Conduct, which governs conflicts of interest involving current clients. However, as Plaintiff correctly notes in its response, Attorney Hymel is no longer with the firm, and Perlman is no longer a client. Thus, the correct rule under which the Undersigned must evaluate Defendant's motion is Rule 4-1.10(c) of the Florida Rules of Professional Conduct, which governs conflicts of interest involving clients of *formerly* associated lawyers.

Rule 4-10(c) provides that:

When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:

> (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
>
> (2) any lawyer remaining in the firm has information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter.

Fla. St. Bar Rule 4-1.10(c)(1)-(2).

Defendant's motion argues that McDonnell had a reasonable subjective belief that Hymel (and, therefore, ArentFox) was Pro-Lab's attorney, which raises an irrefutable presumption that confidences were disclosed during the relationship. Defendant also argues that actual confidential communications were shared with Hymel while he was a partner at ArentFox and that those communications concerned matters which are substantially related to the instant litigation.

According to Defendant, Plaintiff has benefited from the "'fruit of the poisonous tree' in obtaining confidential client information that [it] would not have otherwise had access to but for the client-attorney representations, consultations, and communications" that took place while Hymel was a partner at ArentFox. As relief, Defendant requests that Plaintiff's counsel be disqualified, that Defendant be reimbursed for its fees and costs

associated with both the California and Florida litigation, and that the Complaint be dismissed with prejudice.

Plaintiff challenges Defendant's motion on myriad grounds. First, it says that Defendant's motion is untimely, as Defendant should have made this connection when ArentFox served the Complaint in September 2021, and when it received documents produced on July 15, 2022 by Perlman in response to a subpoena. Next, Plaintiff says that there can be no conflict, because ArentFox never represented Defendant. Third, Plaintiff argues that even if McDonnell reasonably believed that ArentFox was his counsel (or counsel for his company, Pro-Lab) the current litigation is not the same or substantially related to the work that Hymel did for Perlman. Finally, Plaintiff contends that Hymel did minimal work for Defendant and Perlman while he was an ArentFox attorney and claims that no lawyers currently employed by ArentFox have access to confidential information that is material to this case.

Because the Undersigned is denying Defendant's motion on the merits, I decline to discuss the issue of timeliness. I will address the remaining arguments in turn.

    a. <u>McDonnell's subjective belief that ArentFox was his counsel is not reasonable</u>

As support for its contention that McDonnell believes that Hymel represented him and Defendant, Defendant focuses on four facts: "(1) [McDonnell] was requested to pay Lin Hymel's ArentFox invoices for legal services; (2) [McDonnell] paid the invoice; (3)

confidential client communications were [exchanged] between [McDonnell,] [Hymel,] and [Perlman][;] and (4) [McDonnell] was notified [that] PRO-LAB was officially [Hymel's] client for all future billing." [ECF No. 95 (internal citations removed; cleaned up)]. Plaintiff argues that the circumstances surrounding these facts undermine Defendant's contention that McDonnell reasonably believed Hymel represented him and Pro-Lab.

Florida does not require a formal retainer agreement to find that an attorney-client relationship exists. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1281 (11th Cir. 2004) (citing *Eggers v. Eggers*, 776 So.2d 1096, 1099 (Fla. 5th DCA 2001)). When there is no formal retainer agreement, the tests Florida courts use to determine whether a lawyer-client relationship exists "is a subjective one and 'hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention is to seek professional legal advice.' However, '[t]his subjective belief must . . . be a reasonable one.'" *Bartholomew v. Bartholomew*, 611 So.2d 85, 86 (Fla. 2d DCA 1992) (emphasis added) (quoting *Green v. Montgomery County, Ala.*, 784 F. Supp. 841, 845–46 (M.D. Ala. 1992)).

According to McDonnell's affidavit, "[he] believed Hymel (while employed by [ArentFox]) was representing [his] interests and [Pro-Lab's] in the collaboratively developed products with [Perlman][,] including the 'spore trap' based on the emails and telephone communications during his employment at ArentFox." [ECF No. 95-18]. He

7

says that it was his "reasonable belief that [he] was represented by [Hymel]." *Id.* Before making these statements, McDonnell's affidavit references several emails which were also included with Defendant's motion.

Plaintiff argues in its response that these emails actually demonstrate the unreasonableness of McDonnell's position. First, Plaintiff notes that Perlman initially emailed McDonnell about the potential for Hymel to take Pro-Lab on as a client [ECF No. 95-11], and then reached out twice more asking McDonnell to *confirm* that he wants Hymel to send him the engagement documents so that he could become Hymel's client [ECF Nos. 95-11; 95-14]. Next, Plaintiff counters McDonnell's assertion -- that he believed he was a client because he was the person solely responsible for the legal fees associated with the petri dish patent -- by noting that Hymel's email to McDonnell stated, "[Perlman] has asked me to forward this invoice to you, since per *your* agreement[,] you are responsible for payment for this patent application." [ECF No. 95-6 (emphasis supplied)]. Further, Plaintiff highlights that the invoice itself, although paid by McDonnell, is addressed to only "Perlman Consulting, LLC" and "Daniel Perlman, CEO." [ECF No. 95-5].

Defendant does not meaningfully address these issues in its reply. Instead, it relies on *ad-hominem* attacks on Plaintiff's arguments. Although Defendant repeatedly highlights some of the emails discussing the intricacies of the "spore trap," whether

8

technical information was discussed between two individuals with an attorney CC'd on the email exchange is not the standard.

As stated by the Eleventh Circuit, Florida case law makes clear that the "subjective but reasonable belief" test "is applicable only after a putative client **has consulted with an attorney**." *Jackson*, 372 F.3d at 1282 (emphasis supplied). To illustrate this principle, the *Jackson* Court summarized two relevant Florida state appellate decisions:

> [I]n *Bartholomew*, actual contact between an attorney and the putative client several times on a golf course, where "business in general" was discussed, was insufficient to establish the existence of an attorney client relationship. 611 So. 2d at 86–87. In spite of conversations that occurred between the lawyer and the putative client, the court said there was no attorney-client relationship where the lawyer's fellow golfer never actually consulted the attorney with the manifested intention of retaining him for legal services.
>
> Also illustrative is *The Florida Bar v. Beach*, 675 So.2d 106 (Fla. 1996). In *Beach*, the plaintiff contracted with a paralegal firm to prepare legal documents, which were to be reviewed by attorney Beach. *Id.* at 107. The contract stipulated that Beach would not represent the client unless she entered into a separate agreement with him. *Id.* The paralegal firm provided legal advice based on input from Beach, who never met or spoke with the client. *Id.* at 107–09. Where the client never actually communicated with or otherwise consulted the attorney, the Florida Supreme Court concluded that no attorney-client relationship ever existed. *Id.* The court reached this conclusion despite the fact that the putative client testified that she considered Beach to be her attorney based on communications she received from the paralegal firm. *Id.* at 109 n. 3. In the absence of even an informal consultation between the lawyer and the client, no attorney-client relationship was established, notwithstanding the putative client's subjective beliefs.

372 F.3d at 1282.

9

McDonnell was urged by his colleague, Perlman, on multiple occasions to reach out to Hymel so that he and Pro-Lab could become a client. Defendant has presented no evidence that McDonnell ever contacted anyone at ArentFox about becoming a client, nor does McDonnell's affidavit aver that he ever took those steps. Instead, he relies on the fact that his colleague, Perlman -- who is not an attorney, nor an employee of ArentFox -- said in an email that, "[w]ith [McDonnell]/Pro-Lab becoming [ArentFox's] official client, future invoices should be written to Pro-Lab rather than me." [ECF No. 95-15]. This is insufficient to show that McDonnell actually consulted with Hymel.

Other than paying the invoice addressed to Perlman and his company, Defendant has provided no documentary evidence that McDonnell ever contacted Hymel. Instead, the emails show that the only individual to either send an email to Hymel or to CC Hymel on an email was *Perlman*. Said differently, Defendant has presented no evidence that McDonnell ever consulted with Hymel, received legal advice from Hymel, or that any work was done for Pro-Lab by Hymel.

Although McDonnell claims in his affidavit that some of these events occurred, he cites to exhibits which do not support his assertions. For example, McDonnell claims that "[o]n December 31, 2019, [ArentFox], by and through their attorneys[,] filed the "petri dish" patent on behalf of **[Pro-Lab]** and [Perlman] and [Perlman Consulting]." [ECF No. 95-18 (emphasis added)]. He cites to Exhibit 4, which contrary to his assertion, reflects

10

that the patent application was filed on December 31, *2018* (before the merger, and five months before Perlman began emailing McDonnell telling him to reach out to Hymel so that he could become a client) and includes only Perlman's name on the application. [ECF No. 95-4].

At bottom, McDonnell was given specific instructions on what he needed to do to become Hymel's client. There is no evidence that he ever followed those instructions. His conclusory assertions (either offered with no support or with support from documents which contradict the assertion) are insufficient to establish that McDonnell has a *reasonable* belief that Hymel was his attorney. And, because McDonnell did not have a *reasonable* belief that he was a client and because no evidence has been presented to establish that he actually was a client,[1] there is no basis to disqualify Plaintiff's counsel.

> b. Even if McDonnell Reasonably Believed that Hymel was his Attorney, the Purportedly Confidential Communications are Insufficient to Warrant Disqualification.

The basic allegation in this lawsuit is a straightforward one: Plaintiff alleges that Defendant is using its ZEFON AIR-O-CELL cassettes to house its own internal mold

---

[1] But Plaintiff submitted a declaration stating that Pro-Lab was never a client of ArentFox [ECF No. 97-3]. The declaration of Katrina Delawter, ArentFox's Senior Director of Finance, explains that there is no client number or other accounting entry in its records indicating that ArentFox ever represented Pro-Lab. The declaration notes that ArentFox's regular practice was, and still is, to assign a client number to each client the firm represents [ECF No. 97-3].

11

testing components, which violated Plaintiff's intellectual property rights via trademark infringement, trademark counterfeiting, false designation, and other claims. [ECF No. 30].

As stated previously, Rule 4-10(c) prohibits a firm from appearing in a case against the client of a former attorney only if: "(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; **and** (2) any lawyer remaining in the firm has information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter." On this issue, Defendant lists a litany of facts in a block of text, which it believes establishes that "[i]t is indisputable the matters are substantially related[,] if not identical." To improve readability, the Undersigned will summarize and organize the facts and conversations (rather than quote Defendant's assertions verbatim):

(1) Hymel was CC'd in an email which included the following information:

   a. McDonnell and Perlman were "tweaking . . . the adhesive-coated cover slips for the spore traps";
   b. Perlman left messages with McDonnell about "moving the spore trap technology forward";
   c. It was Perlman's understanding that McDonnell "wanted to commercialize the use of the new innovative '8148-X' 3M optically clear acrylic adhesive that [Perlman] found for trapping spores in the Z5 and Air-O-Cell cassettes";
   d. "[The] adhesive would be used together with [Perlman's] 'mass-production' method employing [his] newly created mounting jug for applying pre-cut strips of the adhesive film to ten or more glass cover slips at a time";
   e. McDonnell covered the $450 in machine expenses incurred building the mounting jig;

  f. "Diana reported back that the jig works very well in her hands for applying that adhesive to ten cover slips at a time";
  g. Hymel was willing to work with Perlman and McDonnell to file a patent application; and
  h. Perlman had the understanding that **if Hymel performed that service, then "he would formalize his firm's relationship with McDonnell as a client."**

(2) Hymel was CC'd in an email which included the following information:

  a. Perlman asked McDonnell to confirm that payment for the invoice was on the way;
  b. Perlman asked McDonnell to confirm that he wanted Hymel to provide the formal documents so that McDonnell could become Hymel's client for the Petri Dish and the Spore Trap patents;
  c. Perlman asked McDonnell to return a countersigned copy of the spore trap agreement;
  d. Perlman asked McDonnell whether McDonnell wanted Perlman to work with him or Diana to order the spore trap 3M adhesive strips and the cover slips.

[ECF No. 95 (citing [ECF Nos. 95-10; 95-11])].

Although Defendant listed the contents of both of the subject emails, its only argument as to *how* these matters are substantially related is that "[i]t is indisputable that the matters are substantially related[,] if not identical."

Plaintiff notes in its response that it is not asserting any patent claims and states:

There is no allegation here that Perlman is not the inventor of the '387 patent, or that Perlman Consulting's rights in the patent are incomplete, or that the patent is invalid. Instead, [Pro-Lab] has merely raised this patent in the case in order to identify the collection media that it uses in the reused Zefon® cassettes in response to discovery requests from Cole-Parmer.

13

[ECF No. 97]. Plaintiff says that Defendant has failed to provide any explanation for how these two issues are actually related beyond the fact that they both concern the "spore trap."

Defendant offers the following argument in its reply:

> Substantially related is specifically identified in contradiction to Plaintiff's Counsels' claims particularly as it pertains to the use of the reused Zefon cassettes under the Spore Trap patent (*387) and if counsels had reviewed the patent there are multiple citations to the use of the recycled cassettes of Air-O-Cell/Zefon Page1, C4-9, C9:14-38, C1034-40 clearly establishes the cassettes PRO-LAB distributes meet the limitations of the claim as refurbished and falling under the "patent claims.

[ECF No. 98 (no alterations made)].

This is unhelpful. Despite re-reading the argument multiple times, the Undersigned cannot see how it responds to Plaintiff's argument that the issue of whether Defendant is using its intellectual property has nothing to do with the filing of the patent.

The party seeking disqualification bears the burden of "show[ing] that the matters embraced within the pending suit are substantially related to the matters or cause of action wherein the attorney previously represented him." *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1028 (5th Cir. 1981).[2] Defendant has fallen well short

---

[2] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

of that burden by failing to offer any insight as to *how* these matters are supposedly substantially related.

There are two additional issues with Defendant's argument which warrant discussion.

First, the communications at issue -- the contents of two emails sent on April 26, 2019 and April 29, 2019 -- predate Perlman's May 3, 2019 email, stating, "[p]lease [email Hymel] to send you his engagement docs **so that you can become his client** for the continuing Petri Dish patent prosecution and for the Spore Trap patent writing." Given this timeline, even if McDonnell's belief that Hymel was his attorney was reasonable (which it was not), that belief certainly did not exist in April when the purportedly confidential communications were sent. Second, Defendant has uploaded these supposedly "confidential" communications publicly on CM/ECF, which means that the information which Defendant claims Plaintiff has improperly received is available for the public -- including any future attorney -- to review.

In summary, Defendant has failed to establish both that the matters are substantially related and that Plaintiff's counsel has any information currently protected by attorney-client privilege.

**IV.   Conclusion**

15

Defendant has failed to establish that McDonnell had a reasonable belief that former ArentFox attorney, Hymel, was his counsel and that his communications were protected by attorney-client privilege. Further, even if Defendant had established that element through McDonnell's supposed belief, the belief could not have existed before the communications at issue were exchanged. Finally, Pro-Lab has not established that the communications at issue substantially relate to the instant case. Defendant has not identified any other rule of professional responsibility which it believes Plaintiff's counsel violated. Therefore, the Undersigned **denies** Defendant's motion to disqualify and its related request for sanctions.

In its opposition response, Cole-Parmer asks that *it* be awarded attorney's fees for its time responding to the motion and the time spent trying to obtain discovery which Pro-Lab refuses to provide through its "unilateral decision to halt discovery." But Courts typically do not rule on requests embedded in a legal memorandum, as opposed to being actually raised in a motion. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999) (Where a request for [affirmative relief] simply is imbedded within an opposition memorandum, the issue has not been raised properly."); *Holding Co. of the Villages, Inc. v. Little John's Movers & Storage, Inc.*, No. 5:17-CV-187-OC-34PRL, 2017 WL 9938032, at *1 (M.D. Fla. July 20, 2017) ("[A] request for affirmative relief, such as a request for leave to

amend a pleading, is not properly made when simply included in a response to a motion.").

Therefore, the Undersigned denies without prejudice Cole-Parmer's incorporated sanctions request. If Cole-Parmer wishes to pursue sanctions, then it may file a separate motion (after complying with its Local Rule 7.1 pre-filing conferral requirement).

**DONE AND ORDERED** in Chambers, in Miami, Florida, on January 6, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE