**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO. 0:21-cv-61756-GOODMAN**
**[CONSENT]**

COLE-PARMER INSTRUMENT
COMPANY, LLC,

     Plaintiff,

v.

PROFESSIONAL LABORATORIES, INC.,

     Defendant.

_____/

**<u>ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS</u>**

In this trademark infringement case, Plaintiff Cole-Parmer Instrument Company, LLC ("Plaintiff" or "Cole-Parmer") filed a motion for sanctions, seeking monetary sanctions against Defendant Professional Laboratories, Inc. ("Defendant" or "Pro-Lab") and its counsel, as well as the exclusion of evidence and defenses. [ECF No. 102]. Defendant filed a response [ECF No. 105] and Plaintiff filed a reply [ECF No. 108]. Additionally, Plaintiff and Defendant each submitted a Court-Ordered declaration, explaining the factual background surrounding discovery and Defendant's earlier-filed Motion to Disqualify Plaintiff's counsel. [ECF Nos. 117-18]. The Undersigned held a two-hour-and-fifteen-minute hearing to address the issues raised in Plaintiff's motion and the

Court-Ordered declarations. [ECF Nos 113; 121].

For the reasons discussed below, the Undersigned **denies** Plaintiff's request to impose monetary sanctions against Defendant's counsel. Further, the Undersigned **grants in part and denies in part** Plaintiff's request for sanctions against Defendant.

## I.      Background

Defendant's approach to its discovery obligations has been, at best, apathetic. There have been multiple instances where Defendant has indicated that there are no additional responsive documents or that no responsive documents exist, only to concede later that these representations were inaccurate. More than six months passed after the parties filed an agreed electronic discovery plan [ECF No. 68] before Defendant hired an Electronically Stored Information ("ESI") vendor. Further, as will be discussed more thoroughly below, Defendant only *partially* complied with the Undersigned's November 4, 2022 Discovery Order. Plaintiff often went to great pains to address these deficiencies but was often frustrated by defense counsel's inability to speak with James E. McDonnell, IV ("McDonnell"), a principal, for lengthy periods of time.

Defense counsel also had a hand in aggravating the discovery issues in this case. After discovering information which Defendant claims necessitated filing a motion to disqualify Plaintiff's counsel, defense counsel unilaterally halted certain discovery. While this disqualification dispute was pending, Plaintiff reached out to Defendant with

proposed dates to scan documents and to schedule depositions. In response to each request, Defendant informed Plaintiff that the proposed dates were unacceptable and that it would be best to hold off on this discovery until the motion to disqualify was resolved. Defendant did not provide any alternative dates.

Ultimately, the Undersigned denied Defendant's Motion to Disqualify Plaintiff's counsel. [ECF No. 99]. Further, in the Order, I denied without prejudice Plaintiff's request to impose sanctions -- which was raised in Plaintiff's response to Defendant's motion -- and permitted Plaintiff to file a separate motion on that issue. *Id.* Plaintiff then filed the instant motion, seeking sanctions related to the motion to disqualify and later discovery-related events.

Plaintiff requests myriad sanctions against Defendant and Defendant's counsel under Federal Rule of Civil Procedure 37(b), 28 U.S.C. § 1927, and the Court's inherent powers. The requests are summarized as follows:

1.   Award Plaintiff the fees and costs it incurred due to Defendant's failure to comply with the Court's November 4, 2022 Discovery Order and prohibit Defendant from

> (1) asserting any of the material costs for the cassettes as evidence for its defenses; (2) asserting any claims that its customers were not confused by the source of the cassettes they were using when filling out the Chain of Custody forms; and (3) claiming that it was not acting in bad faith when purchasing AOC cassettes from third party sellers after Cole-Parmer ceased selling to ProLab.

2.   Award Plaintiff the fees and costs it incurred litigating Defendant's Motion to

Disqualify Plaintiff's counsel.

3. Under 28 U.S.C. § 1927, sanction defense counsel for multiplying the proceedings due to:

> the repeated refusal of ProLab to produce required discovery even after ordered by the Court following a hearing; repeatedly delaying scheduling of key depositions, even after receiving an order by the Court to do so; and filing a meritless Motion to Disqualify even without meeting the basic requirement that an attorney-client relationship or a conflict of interest actually existed.

4. Exclude the eight witnesses Defendant first listed on March 3, 2023, prevent Defendant's previously-listed witnesses from testifying about any newly disclosed categories of information, and prevent Defendant from relying on any documents encompassed by the more-than-thirty new categories of documents which have not been previously disclosed.

[ECF Nos. 102; 118].

## II.   Legal Standard

### a.   Rule 37

Federal Rule of Civil Procedure 37 permits (and sometimes requires) the Court to sanction a party and/or its attorney by requiring the party and/or attorney to pay the opposing party's fees incurred if the offending party has committed certain discovery-related infractions. *See* Fed. R. Civ. P. 37. Under Rule 37(b), the Court may impose a

variety of sanctions based on a party's failure to obey a discovery order. Fed R. Civ. P. 37(b)(A)(i)-(vii).

When a party has disobeyed a discovery order, the party must "pay the reasonable expenses, including attorney's fees, caused by its failure to comply with its discovery obligations, unless the failure to comply was substantially justified or other circumstances make an aware [sic] of expenses unjust." *Jacobi v. Experian Info. Sols., Inc.*, No. 20-CV-60591, 2021 WL 8894465, at *1 (S.D. Fla. Aug. 20, 2021) (citing Fed. R. Civ. P. 37(b)(2)(C)). On the other hand, extreme sanctions such as dismissal or entry of a default judgment are appropriate only "'where the party's conduct amounts to flagrant disregard and willful disobedience of discovery orders.'" *United States v. Certain Real Prop. Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1317 (11th Cir. 1997) (quoting *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987)).

The purpose of Rule 37 sanctions is to: "(i) compensate the court and parties for the added expenses caused by discovery abuses; (ii) compel discovery; (iii) deter others from engaging in similar conduct; and (iv) penalize the offending party or attorney." *Thornton v. Hosp. Mgmt. Assocs., Inc.*, 787 F. App'x 634, 638 (11th Cir. 2019) (citing *Wouters v. Martin Cnty., Fla.*, 9 F.3d 924, 933 (11th Cir. 1993)). "Both parties and counsel may be held personally liable for expenses, 'including attorney's fees,' caused by the failure to

comply with discovery orders." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763, 100 S. Ct. 2455, 2462–63, 65 L. Ed. 2d 488 (1980) (footnote omitted).

  b. <u>28 U.S.C. § 1927</u>

  Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Macort v. Prem, Inc.*, 208 F. App'x 781, 785 (11th Cir. 2006) (internal quotations omitted; alterations in original). In the Eleventh Circuit, a district court must employ the following principles:

> [T]he statute sets out a three-prong, conjunctive test: (1) unreasonable and vexatious conduct; (2) such that the proceedings are multiplied; and (3) a dollar amount of sanctions that bears a financial nexus to the excess proceedings. *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir.1997). All three requirements must be met before sanctions are imposed. We have held that because of the penal nature of § 1927, it is to be strictly construed. *Id.* at 1395. "For sanctions under section 1927 to be appropriate, something more than a lack of merit is required. The statute was designed to sanction attorneys who willfully abuse the judicial process by conduct tantamount to bad faith." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir.2003). There must be bad faith; mere negligence is not enough. *Id.* "A determination of bad faith is warranted where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Id.*

*Id.*

  c. <u>Court's Inherent Powers</u>

Courts have the inherent authority to control the proceedings before them, which includes the authority to impose "reasonable and appropriate" sanctions. *See Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1545 (11th Cir. 1993). To exercise its inherent power a court must find that the party acted in bad faith. *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002) (citing *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995).

The Court's authority to issue sanctions for attorney misconduct under its inherent powers is no broader than its authority to issue sanctions under 28 U.S.C. § 1927. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) ("[I]f the sanctions amounted to an abuse of the district court's discretion under § 1927, they necessarily amounted to an abuse of the court's discretion under its inherent powers, because the court's inherent power to issue sanctions for vexatious conduct by attorneys does not reach further than § 1927.").

### III.   Analysis

    a.   <u>Discovery Order Violations (Rule 37)</u>

On November 3, 2022, the Undersigned held an in-person hearing to address the parties' ongoing discovery disputes. [ECF No. 91]. The following day, the Undersigned issued a written discovery order memorializing the Court's rulings at the November 3, 2022 hearing. [ECF No. 92]. In relevant part, the Discovery Order required the following:

7

[(2)(a):] By November 10, 2022, Defendant shall (if accurate) provide Plaintiff with a sworn declaration or affidavit from a qualified person unequivocally representing that all of its expenses related to the sale or distribution of PRO5 and/or PRO10 cassettes (e.g., gasoline, distribution, packing, burnishing, electric, advertising, etc.) remained the same during each fiscal year from 2019 through the present. If Defendant does not provide Plaintiff with such a declaration because the expenses were not in fact identical for all four years, then by November 17, 2022, Defendant shall provide Plaintiff with all responsive expense-related documents.

***

[(2)(b):] By November 13, 2022, Defendant shall make available to Plaintiff all of the boxes containing the Chain of Custody forms. Plaintiff may take as much time as necessary to review the papers in the boxes and make copies of any documents which reference AOC or ZEFON. The Undersigned will not get involved with how or where the boxes must be made available.

***

[(2)(c):] By November 17, 2022, Defendant shall produce all documents relating to the identities of third-party sellers of AOC cassettes, either new or used, which Defendant has obtained. Defendant need not reproduce documents which have already been produced. If Defendant contends that it has never purchased used cassettes between October 24, 2019 and the present, then it shall submit to Plaintiff a declaration or affidavit from an appropriate individual confirming that it has not.

***

[(2)(d):] By November 17, 2022, Defendant shall produce all documents relating to the identities of third-party sellers of ZEFON products, either new or used, which Defendant has obtained. Defendant need not reproduce documents which have already been produced. If Defendant contends that it has never purchased used cassettes between October 24, 2019 and the present, then it shall submit to Plaintiff a declaration or affidavit from an appropriate individual confirming that it has not.

8

*Id.*

Plaintiff argues that sanctions are appropriate based on Defendant's purported failure to comply with the above-listed provisions of the November 3rd Discovery Order. [ECF No. 102]. The Undersigned will address each provision in turn.

      i.  <u>(2)(a)</u>

There were two ways which Defendant could comply with subsection (2)(a): (1) submit a declaration attesting that its expenses related to the sale or distribution of the cassettes remained the same from 2019 through the present; or (2) provide to Plaintiff all expense-related documents. [ECF No. 92]. In a November 17, 2022 declaration, Defendant stated that:

> Defendant has provided Plaintiff all expense related documents (gasoline, distribution, packing, burnishing, electric, advertising, etc.) for the sale or distribution of PRO5 and/or PRO10 for the fiscal years from 2019 [] through the present.

[ECF No. 117-9].

Plaintiff says that the production referenced in the declaration was "woefully deficient and did not include 'all expense related documents,' as required by the Discovery Order." [ECF No. 118-1]. According to Plaintiff, the documents showed costs for only three of the six categories listed in Defendant's previously-produced bill of materials, did not address Defendant's costs for cassette slide and labor, failed to

delineate whether the costs covered only the Pro-10 and Pro-5 cassettes, and did not include the invoices for many of the companies mentioned. *Id.*

Plaintiff emailed defense counsel to inform Defendant of the deficient production on November 28, 2022. Defense counsel responded the following day, stating that Defendant hoped "to have an answer for [Plaintiff] tomorrow." *Id.* (citing [ECF No. 102-5]) (alteration in original). Plaintiff did not receive any follow-up answer and emailed Defendant again on December 7, 2022. The next day, defense counsel responded that she would "confer with [McDonnell] again when he returns regarding the alleged outstanding documents you [Plaintiff] have requested." *Id.* (citing [ECF No. 102-4]).

After Defendant failed to provide any additional information, on January 4, 2023, Plaintiff informed defense counsel that it would be seeking a discovery hearing. Defense counsel responded on January 10, 2023 by sending an email stating that the report "is the same as the original run date of 2/2/22." [ECF No. 108-8]. In addition, on January 13, 2023, defense counsel sent an email stating that Defendant "does not have any supporting documents for the labor of the cassette [s]lides." [ECF No. 108-7].

Defendant's only direct response to Plaintiff's accusation is that the "cost of material report" is not considered in the "expenses for the sale or distribution of PRO5 or PRO10." [ECF No. 105]. At the hearing, defense counsel argued that Defendant believed it had fully complied with the Court's Order by providing the declaration and additional

documents reflecting certain expenses. Defense counsel says that the cost or material report is only a basic estimate of the cost of producing the cassettes.

Defendant did not fully comply with this subsection of the Order. In the multiple emails exchanged between Defendant and Plaintiff, Defendant expressed uncertainty over the sufficiency of its response and a need to further consult with McDonnell. Further, during the discussions between Plaintiff and Defendant, Defendant seemingly switched positions by stating that the expenses were the same since February 2022 (when it had previously chosen to provide Plaintiff with expense-related documents). Finally, nearly two months after the deadline, Defendant confirmed that there are no supporting documents for the labor of the cassette slides.

Defendant's casual approach towards its compliance required Plaintiff to expend attorney time addressing the ambiguities and deficiencies in Defendant's response. As noted during the hearing, Plaintiff did not receive a concrete answer about the existence of certain documents until January 2023. Defendant violated this provision of the Discovery Order.

ii.   (2)(b)

This provision required Defendant to make available to Plaintiff by November 13, 2022, all boxes containing the Chain of Custody forms. In its November 17, 2022 declaration, Defendant stated that it "has at all times made available all boxes containing

the Chain of Custody forms located at Professional Laboratories and has notified opposing counsel of same." [ECF No. 117-9].

On November 29, 2022, Plaintiff informed Defendant that it would send its own vendor to scan the documents and that Plaintiff would bear the costs of the scanning. Defense counsel responded that she would "coordinate with [her] client to make these boxes available for scanning." [ECF No. 102-4]. In a follow-up email on December 2, 2022, Plaintiff suggested the week of December 12, 2022. *Id.* Defendant did not respond to this email. *Id.* Plaintiff sent a second email on December 7, 2022, again inquiring if the week of December 12, 2022 was acceptable. *Id.*

On December 8, 2022, defense counsel responded that she would need to confer with McDonnell, who was out of town until the next day, about whether the week of December 12, 2022 was acceptable. *Id.* Further on in the email, defense counsel advised that "[i]t may be advisable to hold this process until a determination by the Court of the [yet-to-be-filed] Motion for Disqualification." *Id.* Plaintiff responded that it "disagree[d] . . . that [Defendant] can withhold discovery pending any potential motion for disqualification." *Id.* Defendant did not respond to this email.

In defense counsel's own declaration, she notes that Plaintiff's counsel reached out a third time about potential scanning dates on December 29, 2022. [ECF No. 117-1].

However, defense counsel says that she was unable to provide dates until January 5, 2023 because her client was travelling with limited internet or phone access. *Id*.

Plaintiff says that Defendant began cooperating with scheduling the scanning on January 4, 2023, only after Plaintiff raised the prospect of a potential discovery hearing. [ECF No. 118-1]. Scanning was not completed until January 25, 2023. [ECF No. 118-1].

In her Court-Ordered declaration, defense counsel claims that "[a]vailability [for scanning] was first provided on November 17, 2022 in [McDonnell's] affidavit." *Id*. Defense counsel then mentions January 5, 2023 as the next date when availability was provided.

To put it simply, availability was *not* provided on November 17, 2022. Although McDonnell represented that the documents were *available*, Plaintiff was stonewalled until January 5, 2023. Certainly, some of this may have been due to real-life obligations; however, Defendant never sought to be excused from the requirement that the documents be made available by November 13, 2022. Despite relying on this declaration as compliance, the email exchanges reveal that Defendant did not offer any actual available dates and times until January 5, 2023, which was well after the deadline.

For the above reasons, the Undersigned finds that Defendant violated this provision of the Discovery Order.

      iii.   <u>(2)(c)-(d)</u>

These two provisions required Defendant to produce by "November 17, 2022 . . . all documents relating to the identities of third-party sellers of AOC [or ZEFON] cassettes, either new or used, which Defendant has obtained." [ECF No. 92]. If Defendant did not purchase any used cassettes, then it was required to submit a declaration confirming that it had not. *Id.*

Defendant timely submitted the required declaration advising that it had not purchased any used cassettes. [ECF No. 117-9]. Plaintiff, however, says that Defendant still failed to comply with the Court's Order because Defendant did not timely produce any documents identifying third-party sellers of *new* AOC or ZEFON cassettes. On November 28, 2022, Plaintiff sent to Defendant an email which stated, in relevant part:

> Pro-Lab's most recent production, on November 17, 2022, did not include any such documents. Instead, [McDonnell's] affidavit dated November 17, 2022 simply stated that Pro-Lab "never purchased used AOC [or Zefon] cassettes between October 24, 2019 and the present." However, that statement deals with a separate requirement in the Court's order and does not address the identity of the third-party sellers from whom Pro-Lab purchased new AOC/Zefon cassettes. As discussed in a prior meet and confer, Pro-Lab has produced documents showing that it purchased AOC cassettes from Amazon. However, those documents did not identify who the seller on Amazon was. Pro-Lab must produce all documents showing the identity of that seller and any other sellers from whom it has purchased either new or used AOC/Zefon cassettes.

[ECF No. 102-5].

14

Defense counsel responded the following day that she was conferring with her client and "hope[d] to have an answer for [Plaintiff] tomorrow." *Id.* Plaintiff followed up on December 7, 2022 because it had not received a response. *Id.*

Plaintiff reached out again on December 29, 2022, mentioning Defendant's purported "position that no discovery can move forward while its motion to disqualify is pending," and asking whether Defendant had withdrawn this position, requesting a meet-and-confer date if it had not. [ECF No. 102-6]. Defense counsel responded that she forwarded the request to her client, who was unavailable until January 9, 2023.

According to Plaintiff, "[o]n January 18, 2023, Defendant finally produced what it claimed were all the documents that identify the third-party sellers from whom Defendant has purchased new AOC cassettes" [ECF No. 118-1]. This belated production, Plaintiff says, revealed an additional seller that had not been previously disclosed by Defendant in discovery.

Defendant does not meaningfully dispute this timeline. In defense counsel's declaration, she represents that the documents provided on January 18, 2023 contained the same information included in documents which were produced on January 13, 2023. [ECF No. 117-1].

Both dates, however, fall well outside of the deadline set by the Court. Thus, the Undersigned finds that Defendant violated this provision of the Discovery Order.

15

iv.  <u>Sanctions</u>

The Discovery Order provided Defendant with deadlines. Defendant never sought a stay or extension of any of these deadlines. It appears to the Undersigned that after Defendant made its initial deficient production, McDonnell (apparently the only person at Pro-Lab who could assist with discovery) was entirely unavailable until early January. The Undersigned is cognizant that litigants (and their attorneys) have lives outside of a lawsuit. However, Defendant cannot rely on its half-hearted attempt at complying with a Discovery Order to justify its complete failure to meaningfully address these discovery issues for nearly two months.

Accordingly, the Undersigned finds that Defendant violated provisions 2(a)-(d) of the Discovery Order. Therefore, under Federal Rule of Civil Procedure 37, Plaintiff is entitled to its fees and costs incurred obtaining the sought-after discovery. However, the Undersigned denies Plaintiff's request to prevent Defendant from presenting certain evidence, defenses, or arguments. Plaintiff has not demonstrated that such a drastic remedy is necessary based on these delays. *Wallace v. Superclubs Props., Ltd.*, No. 08-61437-CIV, 2009 WL 2461775, at *5 (S.D. Fla. Aug. 10, 2009) ("In fashioning [Rule 37] sanctions, courts should ensure that the sanctions are 'just and proportionate to the offense.'" (quoting *Rude v. The Dancing Crab at Wash. Harbor, L.P.*, 245 F.R.D. at 18, 22 (D.D.C. 2007)).

The cost-shifting award (which includes an attorney's fees award) shall be imposed against only Defendant (i.e., not against defense counsel).

### b. Motion for Disqualification (28 U.S.C. § 1927/Inherent Powers)

On December 9, 2022, Defendant, relying on information which it claims to have first discovered on November 3, 2022, filed a motion to disqualify Plaintiff's counsel, dismiss the case with prejudice, and award Defendant its fees and costs incurred defending the lawsuit. [ECF No. 95]. The Undersigned denied Defendant's motion. [ECF No. 99].

Plaintiff says that by filing this motion, "[Defendant] and its counsel acted in bad faith by knowingly or at least recklessly raising arguments . . . that were frivolous, thereby effectively delaying discovery and circumventing the Court's clear order regarding [Defendant's] compliance with discovery." [ECF No. 102]. In addition to characterizing Defendant's motion as "meritless[,]" Plaintiff also says that it was untimely because Defendant should have been aware of the potential conflict (if one existed) as early as July 2022.

At the hearing, defense counsel explained that she first became aware of the potential conflict in early November. Although an email which included Attorney Hymel's ArentFox email address was provided to Defendant in July 2022, defense counsel said she did not notice that Hymel was using an ArentFox email address because

she did not look closely at the email addresses and had never known Hymel to work at ArentFox. Defense counsel went on to explain that she first became aware of the possible conflict when a check issued to ArentFox was discovered during Defendant's ESI search of an employee's computer. Defendant then ran targeted searches, which uncovered the other documents which Defendant relied upon in its motion.

Defense counsel also explained that shortly before filing the motion, she attended a continuing legal education program which discussed conflicts of interests and the obligations of counsel confronted with evidence of a potential conflict. Defense counsel says that she has never previously filed such a motion in her career -- but, based on what she learned during the CLE course, felt that it was necessary to file the motion to disqualify in order to protect her client's interests. Defense counsel also explained that she wanted to take a "cautious" approach to discovery while the motion was pending. She was unable to meaningfully elaborate on what was meant by the word "cautious." Apparently, in practice, cautious meant unilaterally invoking a *de facto* discovery stay.

In Plaintiff's view, the motion for disqualification was a subterfuge, designed to allow Defendant to continue avoiding its discovery obligations. Plaintiff argues that it should have been obvious on its face that the motion was without merit. And, because the motion was purportedly entirely without merit, Plaintiff contends that defense

counsel should be personally sanctioned under 28 U.S.C. § 1927 and ordered to pay Plaintiff its attorney's fees incurred defending against the Motion for Disqualification.

To warrant sanctions under § 1927, an attorney must do more than merely pursue meritless claims; if that were the standard, sanctions "would be due in every case." *See McMahan v. Toto*, 256 F.3d 1120, 1129 (11th Cir. 2001). Instead, § 1927 sanctions can be imposed only when an attorney's conduct is so egregious that it is "tantamount to bad faith." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007). In this context, "bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct." *Id.*

Plaintiff has not established that Defendant's motion and actions are any different than the garden-variety disputes which arise in most litigation. Certainly, defense counsel could have been more diligent in reviewing documents produced in discovery and should have sought a court ruling before unilaterally deciding to halt certain discovery. Nonetheless, these actions are not "tantamount to bad faith."

Important here, there was a factual basis for Defendant's motion. Although Defendant's Motion for Disqualification was denied, it was premised on Defendant's representations to its counsel, an earlier check Defendant issued to Plaintiff's current firm, and documents obtained from a third party who is (and was during the relevant time period) represented by a lawyer formerly employed by Plaintiff's current firm.

Further, defense counsel's actions in stonewalling discovery, although ill-advised, were not a product of bad faith but were instead due to her decision to proceed "cautiously." Moreover, defense counsel, through no identified fault of her own, was often unable to communicate with her client during the relevant time period.

At bottom, sanctions are not warranted under 28 U.S.C. § 1927. And, because the Court's inherent power to sanction is no broader than the authority to sanction under § 1927, sanctions against defense counsel are also not warranted under this theory. Therefore, the Undersigned **denies** Plaintiff's request that a fee-shifting award be entered as a sanction against defense counsel personally.

c.  Newly-Disclosed Evidence

On March 3, 2023 -- three days before the then applicable discovery deadline -- Defendant produced the following supplemental Rule 26 disclosures:

Defendant disclosed to Plaintiff eight additional witnesses (six customers and two employees): Duane Knowles, Daniel Leon, Zak Khoshbin, David Barbieri, William O'Gorman, Rich Omega, Nelson Lapidus, and Ron Romero. [ECF No. 118-1]. In addition to listing these eight witnesses, Defendant also "reserve[d] the right to call . . . any employee of . . . defendant corporation." *Id.* (alterations in original). These individuals were not identified in any of the discovery previously produced to Plaintiff.

Further, Defendant amended the categories of information section for witnesses Diana Sauri and Ben Molina to include new categories of information for which the witness has knowledge.

Finally, Defendant added more than 30 additional types of documents in its disclosures.

On March 4, 2023, the Undersigned extended the fact discovery deadline from March 6, 2023 to April 7, 2023 but prohibited either party from issuing any new discovery requests or from taking the depositions of any witnesses which the party had not previously attempted to schedule. [ECF No. 116]. Thus, this new deadline did not permit Plaintiff any leeway to seek discovery on these newly disclosed witnesses, categories of information, or categories of documents.

Effectively, Defendant disclosed a great deal of new information to Plaintiff with approximately three days left to complete fact discovery. At the hearing, Defendant did not provide any justification for the late disclosures. Its sole argument on the issue was that Plaintiff should have been aware of William O'Gorman because its counsel contacted him (but Defendant could not describe the nature or specifics of the contact). Defendant believes that Plaintiff's counsel may have contacted other witnesses but was not "confident" about the assertion.

Defendant admitted that the disclosure was late and admitted that Plaintiff was left with no opportunity to conduct discovery. When discussing the newly-listed categories of documents, Defendant stated that this was done to merely provide more-detailed categories and did not mean that there were additional documents in existence.

Federal Rule of Civil Procedure 37 says that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Information or witnesses disclosed on the eve of the discovery deadline are considered untimely. *Powell v. Burger Docs Atlanta, Inc.*, No. 1:19-CV-3808-MLB, 2021 WL 4192864, at *6 (N.D. Ga. Sept. 14, 2021) (excluding witness which was disclosed on the last day of discovery); *Onsite Healthcare Servs., Inc. v. Layne*, No. 5:10-CV-00237-RS-GRJ, 2011 WL 13238343, at *3 (N.D. Fla. Apr. 1, 2011) (considering as untimely a witness disclosed two days before discovery cutoff).

Because Defendant has failed to offer any justification for its untimely disclosure and there is no extension available which would not also require continuing the trial date, exclusion is the only remedy. Therefore, the Undersigned excludes Duane Knowles, Daniel Leon, Zak Khoshbin, David Barbieri, William O'Gorman, Rich Omega, Nelson Lapidus, Ron Romero, and any other employee not timely disclosed from offering any

testimony which is not exclusively for the purposes of rebuttal. Further, the Undersigned prohibits Diana Sauri and Ben Molina from offering testimony on any topics which were newly disclosed in Defendant's March 3, 2023 disclosure. Finally, Defendant may not rely on any documents encompassed by the more-than-thirty new categories of documents not previously provided to Plaintiff during discovery.

However, as noted, this ruling does not prohibit Defendant from presenting rebuttal evidence. Federal Rule of Civil Procedure 26(a)(1)(A) does not require disclosure of witnesses whose testimony will be used solely for impeachment purposes. Fed. R. Civ. P. 26(a)(3). The witness' testimony must be actual rebuttal testimony -- "merely labeling an individual as a rebuttal witness does not exempt the witness from disclosure. Rebuttal evidence is utilized to respond to matters first introduced by the opposing party and is offered 'to explain, repel, counteract, or disprove the evidence of the adverse party.'" *Lawson v. Plantation Gen. Hosp., L.P.*, No. 08-61826-CIV, 2010 WL 11504835, at *3 (S.D. Fla. May 3, 2010) (quoting *United States v. Lezcano*, 296 F. App'x 800, 803 (11th Cir. 2008)).

## IV.    Conclusion

Under Rule 37, Defendant shall pay Plaintiff the attorney's fees Plaintiff incurred seeking compliance with subsections (2)(a)-(d) of the November 4, 2022 Discovery Order. By April 17, 2023, Plaintiff shall file on CM/ECF its billing records associated with only those tasks. The Undersigned will use the previously determined $600.00 an hour

blended rate. If Defendant disputes any of Plaintiff's time entries, then within five days of Plaintiff's CM/ECF filing, Defendant shall file on CM/ECF a document identifying its disputes with particularity and shall also file its own complete time records (i.e., not just those associated with the above-mentioned tasks) from November 4, 2022 through March 14, 2023.

The Court urges the parties to agree on an amount of attorney's fees and the date when it must be paid. The parties shall file a joint notice by April 27, 2023, advising whether they have agreed on the attorney's fees or whether the Undersigned needs to grapple with the issue. At the risk of stating the obvious, the Undersigned prefers to not become entangled in a tussle over the amount of fees arising from these discovery disputes. If circumstances require me to slog my way through detailed billing records, then I will require further briefing, the retention (by both sides) of expert witnesses on the reasonableness of the fees requested and an evidentiary hearing in which the experts will testify.

The Undersigned also excludes Duane Knowles, Daniel Leon, Zak Khoshbin, David Barbieri, William O'Gorman, Rich Omega, Nelson Lapidus, Ron Romero, and any other employee not timely disclosed from offering any testimony which is not exclusively for the purposes of rebuttal. Further, the Undersigned prohibits Diana Sauri and Ben Molina from offering testimony on any topics which were newly disclosed in Defendant's

March 3, 2023 disclosure. Finally, Defendant may not rely on any documents encompassed by the more-than-thirty new categories of documents which were not previously provided to Plaintiff during discovery.

Plaintiff's motion is denied in all other respects.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on April 12, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE